

**FILED**

AUG **2 7** 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES PRAH Jr. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **1:19-cv-5747** |
| | ) | **Judge: Matthew F. Kennelly** |
| THE CITY OF CHICAGO, POLICE | ) | **Magistrate Judge: Gabriel A. Fuentes** |
| SUPERINTENDENT EDDIE JOHNSON, | ) | |
| NAKIA HALL FENNER | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, **James Prah,** Pro Se, hereby makes the following complaint against Defendants the City of Chicago, Police Superintendent Eddie Johnson, and Nakia Hall Fenner:

## INTRODUCTION

1.      Plaintiff James Prah Jr. ("Plaintiff" or "Prah") requested that the City of Chicago Inspector General investigate police misconduct; namely, cheating on a Chicago Police Department promotional examination. As a result of the exercise of his First Amendment Rights, Defendants retaliated against him by filing a formal complaint with the Chicago Police Department, a "complaint register." Their purpose in doing so was to retaliate against Prah and to intimidate him and others into silence. As a result, Plaintiff brings this action under the Civil Rights Act, Title 42, Section 1983 of the United States Code, as well as the Illinois Whistleblower's Act.

## JURISDICTION AND VENUE

2.      Jurisdiction is proper pursuant to 28 U.S.C. § 1343(a)(3) & (4), which confers original jurisdiction in a civil action to redress the deprivation of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States under color of any State law, statute, ordinance, regulation, custom, or usage, and to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

3.      Jurisdiction is also proper pursuant to 28 U.S.C. § 1331, which confers original jurisdiction in a civil action arising under the Constitution or laws of the United States, and under 28 U.S.C. § 1367, which confers supplemental jurisdiction over the state law claims.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because the Defendants reside within the District, and because the events or omissions giving rise to the claims alleged occurred and continue to occur within this District.

## PARTIES

5.      Plaintiff, James Prah Jr. is a Sergeant in the Chicago Police Department. He has been employed as a police officer since 1992 and held the rank of Sergeant since 2001.

6.      The City of Chicago is a municipal corporation organized under the laws of the State of Illinois.

7.      Superintendent Eddie Johnson is the current superintendent of the Chicago Police Department, and is the chief policy-maker in the Chicago Police.

8.      Nakia Hall Fenner (hereinafter "Fenner") is currently a Lieutenant in the Chicago Police Department, and is also the spouse of Superintendent Eddie Johnson.

2

9. Maryet Hall is currently a Lieutenant in the Chicago Police Department, and is also the spouse of Former Deputy Police Superintendent Al Wysinger.

10. Davita Ward is currently a Lieutenant in the Chicago Police Department, and was part of the same study group with Fenner and Hall.

11. Eugene Williams is the former Deputy Chief of the Chicago Police Department, and was the subject matter expert for the formation of the lieutenant promotional examination which was given in August 2015.

12. The National Organization of Black Law Enforcement Professionals ("NOBLE") is a police professional organization. Williams was the president of the Chicago chapter, and Johnson was its parliamentarian. Johnson, Williams, Wysinger, Fener, Ward and Hall were members of NOBLE at all relevant times.

13. Joseph Ferguson was and is the Inspector General for the City of Chicago at all relevant times.

14. The Chicago Police Department is a component of the City Government.

15. The Chicago Police Department operates under the direction of the Superintendent who is appointed by the Mayor and approved by the City Council.

16. The Superintendent sets policy and directs the culture of the Chicago Police Department in consultation with the Mayor and other policymakers within the City government.

17. The Chicago Police Department is divided into bureaus and divisions that are further subdivided into sections and units.

18.     The Superintendent along with the First Deputy Superintendent, Chiefs, and Deputy Chiefs have the authority to promote, transfer, and discipline officers within the Chicago Police Department.

19.     The policies and practices of the CPD described are directed, approved, supervised, and implemented by the Superintendent in consultation with other supervisory staff.

20.     Defendants are and were employees of the City of Chicago.

21.     Defendant Johnson's actions were within the scope of his employment and within the scope of his authority as manager and policymaker overseeing the operations of the CPD.

22.     Defendant Johnson had supervisory and final policymaking authority within the Chicago Police Department.

23.     Each act alleged was done under color of authority and color of law vested in the City of Chicago as a municipal corporation within the State of Illinois.

24.     The acts of the Defendants are not isolated; rather, they constitute a pattern and practice so permanent and well-settled as to constitute an actionable "custom or usage."

25.     The City of Chicago was aware of prior instances of cheating and manipulation of the testing process within the Chicago Police promotional examinations.

26.     A "code of silence" exists in order to perpetuate misconduct in the Chicago Police Department.

27.     The code of silence has been acknowledged by the City of Chicago.

28.     The City of Chicago encourages and supports the code of silence by ensuring that whistleblowers are wrongfully disciplined, retaliated against, and harassed.

4

<u>FACTS COMMON TO ALL COUNTS</u>

29.     The primary function of the Chicago Police Department is the protection of persons within the City of Chicago.

30.     The Chicago Police Department employs approximately 12,000 full-time officers.

31.     The Chicago Police Department administers examinations in order to allow members to join and be promoted within the Department.

32.     The City of Chicago claims that the examinations are fair and that the examinations are administered by a third-party provider in order to create the appearance of fairness.

33.     The third-party provider uses "subject matter experts" from the Chicago Police Department to create the test, and those subject matter experts are given access to the test before it is administered.

34.     Employees of the Chicago Police Department who take the promotional examination are scored or ranked in order of performance.

35.     Promotions from the ranking list are generally done in order of the highest ranking first. Scoring high on a promotional examination greatly enhances a Chicago Police Department employee's chance for promotion.

36.     The integrity of the Chicago Police Department's promotional system, as well as the system generally, affects the general public.

37.    The promotion of competent, qualified and knowledgeable officers within the Chicago Police Department helps to ensure that proper police procedures are followed and the civil rights of the citizens of Chicago are respected.

38.    The promotion of unqualified or underqualified persons to higher ranks within the Chicago Police Department leads to violations of citizens' civil rights and to problems, such as was noted by the United States Department of Justice Civil Rights Division and the United States Attorney's Office for the Northern District of Illinois January 13, 2017 Report ("Justice Department Report").

39.    When unqualified or underqualified persons are promoted to higher ranks within the Chicago Police Department, those persons are more likely to authorize or condone the use of excessive force against civilians, and are otherwise not as knowledgeable or capable of supervising police officers.

40.    Officers within the Chicago Police Department have been promoted based on their personal relationships, and not based on competence and/or knowledge.

41.    The failure to promote competent and qualified officers leads to, among other things, fatal errors in police procedures and judgment.

42.    Systemic problems within the Chicago Police Department, such as those identified by the Justice Department Report, can be traced to the wrongful promotion of officers.

43.    Defendant Johnson, along with former Deputy Chief Eugene Williams and other supervisory staff sought to advance the careers of their wives, girlfriends, friends, etc. (collectively "wives and girlfriends"), also members of NOBLE, within the Chicago Police Department.

44. On the Chicago Police Department lieutenant's examination administered in 2006, the wives and girlfriends did not score within the top tier.

45. As a result, Johnson, Williams, and others conspired to obtain promotions for their wives and girlfriends through the manipulation of the testing process.

46. Johnson, Wysinger, Williams, and others decided to improperly assist their wives and girlfriends, as well as other NOBLE members, by providing them with information contained in the promotional examination. The purpose of doing so was to allow those individuals to score in the highest echelon of the ranking list and achieve a promotion.

47. A new lieutenant's promotional examination was administered for the Chicago Police Department in 2015.

48. Williams was a "senior subject matter expert" for this lieutenant's examination and had access to the test before it was administered. He approved the final content of the examination. Williams was bound by a confidentiality obligation that restricted him from sharing any details about the examination with any test-takers.

49. Wysinger's wife, Johnson's fiancée, and other NOBLE members formed a "study group" for this examination. The study group was not open to all sergeants in the Chicago Police Department.

50. The study group met at times during working hours, including while Hall, Ward, and Fenner, were on duty. The study group held such meetings in a room adjacent to Williams' office. Williams was the only person within the Chicago Police Department who had access to the examination.

51.     Upon information and belief, Williams violated the confidentiality provision by providing access to the examination materials to Fenner, Hall and Ward, and others in the NOBLE study group.

52.     In addition to being given information about the examination, Fenner, Hall and others in the study group were allowed access to Williams' Blackberry in order to request information about the examination.

53.     With access to the test materials, Fenner, Hall, and Ward greatly improved their score on this examination when compared to past performances. In fact, Fenner and Ward achieved the highest scores on the examination when compared to all test-takers.

54.     In 2016, Johnson, Williams and Wysinger began using the results from the new examination to promote Fenner and Ward from the new promotion list.

55.     Fenner and Ward were subsequently sworn in as lieutenants.

56.     Plaintiff learned of information that he believed demonstrated that the lieutenant's test had been manipulated in order to assist the wives and girlfriends of Johnson and Wysinger; and on his own time, Plaintiff reported this information to his union, and to the City of Chicago Inspector General.

57.     Plaintiff understood that a making a complaint to the Inspector General was outside his chain-of-command.

58.     The City of Chicago "officially" encourages good-faith reports of police misconduct to the Inspector General by police officers.

59.     Despite this "official" policy, when Chicago police officers report the misconduct of their supervisors, they are subject to retaliation within the Chicago Police Department.

60.     The Defendants obtained the identity of officers who reported the alleged cheating to the press, and those who made complaints to the Inspector General, in order to retaliate against those officers who reported their suspicion of misconduct.

61.     The Defendants obtained the identity of the Plaintiff and another sergeant who made a complaint.    Upon information and belief, Defendants' obtained this confidential information from the Inspector General's Office.

62.     Upon information and belief, in identifying Plaintiff, the Inspector General disregarded procedure and confidentiality due to pressure from the Mayor to protect his newly installed Superintendent.

63.     Having obtained the identities of Plaintiff and another sergeant who complained, Defendants agreed to engage in actions which would punish Plaintiff for reporting the testing irregularities to the Inspector General.

64.     As a result of Plaintiff's speaking to other police officers, to his union, and to the inspector General, Fenner and Johnson initiated an official investigation against Plaintiff by filing the complaint register ("CR").

65.     The CR asserts that Plaintiff made a false report to the Chicago Police Department.

66.     Plaintiff informed his union, and complained to the Inspector General of the circumstances showing that the study group had access to examination materials prior to the test.

67.     The filing of a CR against Plaintiff is similar to the filing of a complaint against a citizen for a legal violation.

68.     Plaintiff first learned of the CR and its contents on August 29, 2018 after a notice was sent to him from the Chicago Police Department's Internal Affairs Division.

9

69.     As a result of the CR, Plaintiff was compelled to appear in the Internal Affairs Division on two occasions—once in September 2018 and again in March 2019—in order to answer questions and to provide statements to police investigators. In accordance with Chicago Police Department rules, Plaintiff was required to answer any questions posed.

70.     Plaintiff needed to engage counsel in order to represent him in the CR investigation and during the interviews.

71.     The determination of Fenner's CR against Plaintiff is still pending. Its disposition rests with Defendant Johnson, and those who report to him.

72.     Regardless of the ultimate disposition of the complaint, the complaint will remain in Plaintiff's file for a minimum of seven years and will affect his career at the CPD, as well as his ability to obtain jobs in the private arena.

73.     Plaintiff was eligible to retire, and wanted to retire in 2019.  The Plaintiff cannot now retire, because if he was to retire with an active CR investigation, he would not be eligible for certain retirement benefits.

74.     Since January 2019, Plaintiff has applied for several private security positions for which he is well-qualified.  On information and belief, Plaintiff has not been offered the security positions because of the pending CR number and investigation.

75.     The pending CR continues to harm the Plaintiff.

## COUNT ONE
(42 U.S.C. § 1983 – First Amendment Retaliation)

76.     Plaintiff repeats and realleges and incorporates by reference the factual allegations of paragraphs 1-75 as if set forth fully herein.

77.     The First Amendment of the United States Constitution guarantees Plaintiff's right and all citizens' right to speak out on a matter of public concern without fear of unjust retaliation.

78.     Plaintiff engaged in matters of public speech on matters of public concern by informing other police officers, his union, and others  about the appearance of impropriety and cheating with regard to the Lieutenant's examination given in 2015.

79.     In direct retaliation for his exercise of free speech, Defendants Chicago, Johnson and Fenner retaliated against Plaintiff in the manner described in the preceding paragraphs.

80.     The retaliation and misconduct described in this Count constitute municipal policy as it is the widespread practice of the City of Chicago to retaliate against officers who investigate and/or complain of corruption and misconduct in the Chicago police department.

81.     As a result of the aforementioned deprivation of federal rights, Plaintiff suffered, continues to suffer, and will likely suffer harm including, loss of income and benefits, loss of earning potential, loss of employment of life, loss of employment opportunity, harm to reputation, and emotional distress.

Wherefore, Plaintiff prays for entry of a judgment in his favor and against Defendants Chicago, Hall, and Johnson, that damages be awarded in an amount in excess of $50,000 against Defendants Chicago, Hall and Johnson, and for an award of such other and further relief as deemed just and equitable under the circumstances.

## COUNT TWO
(740 ILCS 174/1 *et seq.* – Retaliation)

82.     Plaintiff repeats and realleges and incorporates by reference the factual allegations of paragraphs 1-75 as if set forth fully herein.

83.     The Illinois Whistleblower Act, 740 ILCS 174/1 et seq., protects employees from retaliation by employers who disclose information that is in violation of any State or Federal law, or rule or regulation.

84.     The General assembly created a statutory scheme guarantees access to public employment based on fair considerations of the applicants' qualifications and forbid cheating.

85.     The General Assembly determined that "[n]o person or officer shall . . . willfully or corruptly furnish to any person any special or secret information for the purpose of either improving or injuring the prospects or changes of any person so examined, or to be examined, being appointed, employed, or promoted." 65 ILCS 5/10-1-26.

86.     The General Assembly further decreed that: "All examinations shall be competitive among such members of the next lower rank as desire to submit themselves to examination."  65 ILCS 5/10-2.1-15.

87.     The City of Chicago has an Ethics Ordinance that applies to all City workers, which, among other things, prohibits the use of any nonpublic information obtained through the performance of one's duties for private gain, the use of a position to influence action for financial gain, and the advocacy for employment of any City employee's relative or spouse.

88.     The Chicago Police Department has Rules and Regulations, including Rule 4, which prohibits conduct using an official position for personal gain or influence.

89.     Retaliatory actions have been taken against the Plaintiff by the City of Chicago and Johnson, including by:

   a.   The filing of an internal complaint against Plaintiff for reporting misconduct and discrimination;

   b.   subjecting Plaintiff to interviews and keeping him subject to discipline; and

   c.   wrongfully providing false references to prospective employers;

90.     There is a direct connection between Plaintiff's protected activity and the defendants' retaliatory actions.

91.     The internal complaint filed by Fenner cites the protected activity as its basis.

92.     The retaliatory acts taken against Plaintiff would not have occurred but for Plaintiff's protected activity.

93.     The retaliation is being overseen by Superintendent Johnson, and confirmed by the City of Chicago.

94.     The retaliatory acts continue to present.

Wherefore, Plaintiff prays that the Court: (1) enter preliminary and permanent injunctive relief terminating the CR complaint by Defendant Fenner against Plaintiff; (2) prohibit the Defendants from further retaliation against the Plaintiff; (3) award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorney's fees; and (4) awarding all relief to which Plaintiff may be entitled, even if he has not demanded that relief in the pleadings.

## COUNT THREE
(State Law - Civil Conspiracy)

95.     Plaintiff repeats and realleges and incorporates by reference the factual allegations of paragraphs 1-75 as if set forth fully herein.

96.     Defendants, Fenner and Johnson are working together with intent to harm Plaintiff.

97.     Defendants Fenner and Johnson agreed to work together to retaliate against Plaintiff for reporting misconduct and discrimination.

98.     In furtherance of that conspiracy, Defendant Fenner and Johnson are using an internal complaint process to retaliate against Plaintiff.

99.     Defendants' retaliation against Plaintiff is unlawful and illegal, and continues.

100.    The acts of retaliation continue, and are being done pursuant to a common scheme.

Wherefore, Plaintiff prays for entry of a judgment in his favor and against Defendants Fenner and Johnson, that damages be awarded in an amount in excess of $50,000 against Defendants Fenner and Johnson, and for an award of such other and further relief as deemed just and equitable under the circumstances.

## COUNT FOUR
(42 U.S.C. § 1983 – *Monell* Policy Claim Against Defendant City of Chicago)

101.     Plaintiff repeats and realleges and incorporates by reference the factual allegations of paragraphs 1-75 as if set forth fully herein.

102.     The retaliation against Plaintiff and others who complained about cheating on Chicago Police Department promotional examinations was part of one or more *de facto* customs, policies, and/or practices sponsored by the City of Chicago and its policymakers to deter and punish officers who complain of, investigate or publish acts of misconduct and corruption in the police department.

103.     As demonstrated by Judge St. Eve's decision and the verdict in *Obryka v. City of Chicago*, there is evidence that a "code of silence" exists within the Chicago Police Department. *See Obryka v. City of Chicago*, 07 CV 2372 (N.D. Ill. Dkt. 684).

104.     The City's *de facto* policies in this regard have been recognized by numerous high ranking city and police officials, including former Police Superintendent Martin, former Office of Professional Standards Director Fogel, Former Mayor Richard M. Daley, Former Office of Professional Standards Director Shines, and Former Mayor Rahm Emmanuel.

105.     Despite such acknowledgements, Defendant City of Chicago has not acted to eliminate or to counteract the harmful effects of these policies.

106.     As result of the decision of the chief policy-maker, and the practice of retaliating against officers who complain of misconduct, Plaintiff has suffered and will suffer harm.

107.     The aforementioned policies, practices and/or customs described in part herein, separately and together, proximately caused injury to the Plaintiff in this case because, *inter alia*, defendants had good reason to believe that their misconduct would not be revealed, reported, or

15

punished by fellow Chicago Police Department employees, from the Superintendent on down, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

108.    But for the belief that Defendants would be protected, defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

109.    These policies, practices, and customs encouraged, *inter alia*, police misconduct, including that which was the moving force and a direct and proximate cause of the unconstitutional acts committed by defendants in this case and the injuries sustained by Plaintiff.

Wherefore, Plaintiff prays for entry of a judgment in his favor and against Defendant City of Chicago, and that damages be awarded in an amount in excess of $50,000 against Defendant City of Chicago, and for an award of such other and further relief as deemed just and equitable under the circumstances.

## COUNT FIVE
(Indemnification)

110.    Plaintiff repeats and realleges and incorporates by reference the factual allegations of paragraphs 1-75 as if set forth fully herein.

111.    This action was instituted and asserts claims against current employees of a local public entity based on injuries allegedly arising out of acts or omissions occurring with the scope of employment.

112.    Pursuant to Illinois law, the City of Chicago shall indemnify the employee or former employee for any judgment based on the claims asserted in this action, or for a compromise or settlement of the claims asserted in this action.

Wherefore, Plaintiff prays that, pursuant to 745 ILCS 10/2-302, the City of Chicago indemnify and pay any judgment or settlement rendered against any of the Defendants.

Respectfully Submitted,

_____
James Prah   Jr.

27 Aug 19